**WEIR–COVE BAKERY, INC., Plaintiff,**

v.

**UNIVERSAL OVEN COMPANY, INC., Defendant.**

**Civ. A. No. 80–0033–W(H).**

United States District Court,
N. D. West Virginia,
Wheeling Division.

July 23, 1981.

---

5. Four of the seven Dayton directors are officers or employees of Danis.

George J. Anetakis, Weirton, W.Va., for plaintiff.

Frederick P. Stamp, Jr., Wheeling, W.Va., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, District Judge.

Defendant, Universal Oven Company, Inc. (Universal) moves this Court to dismiss for lack of jurisdiction, pursuant to *Rule* 12(b)(2), Federal Rules of Civil Procedure, and insufficiency of service of process, pursuant to *Rule* 12(b)(5), Federal Rules of Civil Procedure, in that Universal, a New

York corporation not authorized to do business in West Virginia, lacks sufficient minimum contacts with the State of West Virginia to be subjected to suit here. Following discovery and the submission of briefs on this jurisdictional issue, the Court held a hearing on Universal's motion and issued a bench ruling on December 22, 1980. Upon its own motion, the Court now vacates the same and issues this Memorandum Opinion and Order.

In opposition to Universal's motion to dismiss, Plaintiff, Weir-Cove Bakery, Inc. (Bakery), a West Virginia corporation, points to the following undisputed contacts which Universal has had with West Virginia and maintains that these contacts are sufficient to confer jurisdiction upon this Court. In 1958 Universal sold a baker's oven to Ray L. Yount[1] of Pittsburgh, Pennsylvania, for $8,000.00. Universal shipped the oven to Bakery in Weirton, West Virginia, f. o. b. Westbury, New York. In 1966, Universal sold to Yount various parts for the oven, valuing approximately $800.00. Universal shipped these parts to Bakery in Weirton, West Virginia, f. o. b. Westbury, New York. In 1966, Universal sold to Yount the services of its employee, Wetzler, who Yount brought into West Virginia to supervise the installation of the oven at Bakery's new business location in Weirton. For the services of its employee, Universal received $1,689.00 from Yount.[2] Bakery brought this action to recover damages after its business location was destroyed by fire.[3]

In support of its motion, Universal directs the Court's attention to the following uncontested facts. Between 1958–1980, Universal (a) had no distributor in West Virginia, (b) had no authorized repair representative in West Virginia, (c) purchased no goods in West Virginia, (d) sold no goods in West Virginia,[4] (e) shipped no goods into West Virginia other than the oven and parts which are the subject of this litigation, (f) paid no taxes, (g) owned no investments or deposits in West Virginia, (h) neither owned nor leased any realty in West Virginia, (i) never appointed an attorney-in-fact in West Virginia to receive service of process, and (j) neither sued nor been sued in West Virginia, other than the present litigation.

■ Before this Court can adjudicate Bakery's claims against Universal, two standards must be met. First, the applicable West Virginia long arm statute must be found to confer jurisdiction.[5] If the statute is found to confer jurisdiction over Univer-

---

1. The law of West Virginia is well settled that, " 'The law indulges no presumption that an agency exists; on the contrary a person is legally presumed to be acting for himself and not as the agent of another person; and the burden of proving an agency rests upon him who alleges the existence of the agency.' " *John W. Lohr Funeral Home, Inc. v. Hess & Eisenhardt Co.*, 152 W.Va. 723, 730–31, 166 S.E.2d 141, 146 (1969), quoting point 3 of the syllabus of *Bluefield Supply Co. v. Frankel's Appliances, Inc.*, 149 W.Va. 622, 142 S.E.2d 898 (1965). Universal has denied having had an agent in West Virginia, while Bakery has neither pleaded nor offered facts to prove that Yount was an agent of Universal. For the purposes of this analysis, therefore, Yount must be viewed as an independent dealer.

2. Universal has alleged that payment for the oven, parts and services of its employee, was made by Yount. Bakery has not alleged that it made payment directly to Universal, but rather asserts "[w]hether this sum was paid by the Plaintiff directly to the Defendant or that Defendant received the money through an inter-

mediary is ... immaterial." The Court agrees with Bakery that the form of the payments has little bearing on the jurisdictional issue. *See, John W. Lohr Funeral Home v. Hess & Eisenhardt Co.*, 152 W.Va. 723, 166 S.E.2d 141 (1969).

3. Bakery's claim was initially brought in the Circuit Court of Hancock County, West Virginia. Service of process was made on Universal pursuant to *W.Va.Code*, § 31–1–15 (1975 Replacement Vol.). Universal petitioned this Court for removal. 28 U.S.C. § 1441(a). This Court having original jurisdiction of the action under 28 U.S.C. § 1332(a)(1), ordered removal.

4. Universal maintains that according to its standard agreement with its customers its products are sold f. o. b. New York. This procedure was followed with respect to the sale of the oven and parts to Yount which were shipped to West Virginia.

5. *W.Va.Code*, § 31–1–15 (1975 Replacement Vol.) is the controlling statute.

sal, the Court must then determine whether its exercise of jurisdiction would comport with due process of law. This Court is bound by the decisions of the West Virginia Supreme Court of Appeals as to whether the long arm statute will reach Universal. *Harford v. Smith*, 257 F.Supp. 578, 580 (N.D.W.Va.1966), citing *Shealy v. Challenger Manufacturing Co.*, 304 F.2d 102, 104 (4th Cir. 1962). "Federal law is controlling, however, as to whether the exercise of personal jurisdiction violates due process." *Craig v. General Finance Corp. of Illinois*, 504 F.Supp. 1033, 1036 (D.C.Md.1981).

## I. CASE LAW

On repeated occasions, the West Virginia Supreme Court of Appeals has given *W.Va. Code*, § 31–1–15 (1975 Replacement Vol.) a narrow construction.[6] In *Hodge v. Sands Manufacturing Co.*, 151 W.Va. 133, 150 S.E.2d 793 (1966), the plaintiff, a West Virginia resident, brought suit against two Ohio corporations, Sands Manufacturing Company and Therm-O-Disc, Inc., in the Circuit Court of Cabell County, West Virginia, when a hot water heater manufactured by Sands exploded. The plaintiff sought to recover for property damage alleging breach of implied warranties and a negligent design and construction of the hot water heater by Sands, and of the heater's thermostat which was manufactured by Therm-O-Disc. Service of process was attempted under *W.Va.Code*, § 31–1–71 [predecessor of § 31–1–15]. The *only* contact which Sands had with the forum was the sale of hot water heaters f. o. b. Cleveland, Ohio, to an independent dealer in West Virginia who subsequently resold the heater to the plaintiff. Therm-O-Disc's contacts with the forum were even more tenuous in that it manufactured, in Ohio, thermostats which it sold, in Ohio, to Sands who installed them in its water heaters. The Court affirmed the dismissal of the complaint against Sands and Therm-O-Disc,[7] holding these, "facts are wholly insufficient to establish the minimum contacts in this State which are necessary to confer jurisdiction in its courts over nonresident defendants who are not personally served with process within the State." 151 W.Va. at 147, 150 S.E.2d at 800.

In *John W. Lohr Funeral Home v. Hess & Eisenhardt Co.*, 152 W.Va. 723, 166 S.E.2d 141 (1969), the Court held that the foreign corporate defendant was not subject to suit in West Virginia when the plaintiff executed a purchase contract for a customized automobile with an independent dealer who in turn placed an order, in his own name, with the out of state defendant manufacturer. The independent dealer defaulted on his obligation to the defendant who in turn refused delivery to the plaintiff. The Court determined that the foreign corporate defendant was not a party to a contract made in West Virginia and had no other contacts with the forum. The Court, therefore, held that the trial court erred in refusing to quash the service of process attempted under the long arm statute.

With respects to counts one, two and three of the complaint, Bakery would have

---

6. *See, e. g. Schweppes U. S. A. Ltd. v. Kiger*, 214 S.E.2d 867, 870–71 (W.Va.1975). Therein, the court stated that *W.Va.Code*, § 31–1–15: "Subjects an unauthorized foreign corporation to the jurisdiction of our courts by providing permissible or lawful service of process only in three types of actions or proceedings noted therein. These are (a) if such corporation makes a contract to be performed in whole or in part, by any party thereto 'in this State'; (b) if such corporation commits a tort in whole or in part 'in this State'; or (c) if such corporation manufactures, sells, offers for sale or supplies any product in a defective condition which causes injury to any person or property 'within this State'. Thus, this statute does not confer upon the State Auditor General [now Secretary of State] or [sic] unlimited authority to accept service upon every foreign corporation not authorized to do business in this state but makes such service permissible only in the stated instances."

7. In *Chase v. Greyhound Lines, Inc.*, 211 S.E.2d 273 (W.Va.1975) the court again determined that a foreign corporation was not amenable to suit in West Virginia under *W.Va.Code*, § 31–1–15 when its only contact with the forum was that its product which was manufactured outside the state was subsequently brought into the forum as a component part of another foreign corporation's product.

this Court extend the reach of the long arm statute to the very factual pattern which the West Virginia Supreme Court of Appeals has held is beyond the statute's grasp. In *Hodge v. Sands Manufacturing Co., supra,* the West Virginia Supreme Court of Appeals found that the West Virginia courts had no jurisdiction over Sands whose only contact with the forum was the sale of a hot water heater f. o. b. Cleveland, Ohio, to an independent dealer in West Virginia who subsequently resold the heater to the plaintiff. In counts one, two and three of Bakery's complaint,[8] Universal's only contacts with West Virginia are the sale in 1958 of a baker's oven f. o. b. New York to an independent dealer who resold the oven to the Plaintiff, and the 1966 sale of oven parts f. o. b. New York to an independent dealer who resold the parts to Bakery. This Court may not apply the long arm statute to reach beyond those limits set by the West Virginia Supreme Court of Appeals. As a result, this Court cannot assume jurisdiction over the first three counts of the complaint. *Accord, Marietta Manufacturing Co. v. Brad Foote Gear Works,* 377 F.2d 889 (4th Cir. 1967).

Count four complains that the fire which destroyed Bakery's place of business resulted from Universal's negligent installation of the oven and flue system. The affidavit of Bakery's president states that an employee of Universal supervised the disassembly and subsequent reinstallation of the oven and flue system when Bakery moved its place of business in 1966 to another location in Weirton, West Virginia. The affidavit of Universal's president acknowledges that in 1966 Universal sold the services of one of its supervisors to Yount in exchange for $1,689.01. Universal further acknowledges that its employee went with Yount into West Virginia to render advice to Yount regarding the oven.

Universal relies on this Court's decision in *Mann v. Equitable Gas Co.,* 209 F.Supp. 571 (N.D.W.Va.1962). In *Mann,* suit was

brought against a Texas corporation whose only contact with West Virginia was the manufacture of pipe in Texas which it sold to a gas company who used the pipe in West Virginia where it exploded injuring the plaintiff. Based on these facts, this Court refused to apply the tort provision of the long arm statute where:

> "There is no showing that this Texas corporation ever did any business in West Virginia or had any agents there. Whatever it did, or failed to do, was in Texas. 209 F.Supp. at 574."

However, it is apparent that Universal's reliance on *Mann* is misplaced. While the Texas manufacturer in *Mann* was never present in the forum, Universal was present through its employee whose alleged negligent acts in West Virginia give rise to count four. Accordingly, count four is within the purview of the West Virginia long arm statute. *Accord, Harford v. Smith,* 257 F.Supp. 578 (N.D.W.Va.1966), renewal motion denied 272 F.Supp. 831 (N.D.W.Va.1967).

## II. DUE PROCESS

Notwithstanding the applicability of the West Virginia long arm statute, a foreign corporation can be sued in West Virginia only if it has such minimum contacts with the state that the maintenance of an action against it in West Virginia does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). A foreign corporation may be sued in West Virginia only when it "purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

Universal relies heavily on *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490

---

**8.** Count one alleges the negligent manufacture and design of the oven and flue system. Count two alleges breach of express and implied warranties of the merchantability and fitness of the oven and flue system. Count three alleges the manufacturer is strictly liable in tort for damages occasioned by the defective oven and flue system.

(1980) to contend that it does not have the requisite minimum contact with West Virginia to be subject to suit here. That case involved a product liability action instituted in an Oklahoma state court by a husband and wife to recover for their personal injuries sustained in Oklahoma in an automobile accident. The plaintiffs were driving an Audi automobile purchased by the plaintiffs in New York while they were still residents of that state. The automobile was being driven through Oklahoma at the time of the accident. The plaintiffs brought suit against a number of defendants including Seaway Volkswagen, Inc., the New York corporation from whom they had purchased the automobile, and World-Wide Volkswagen Corp., the regional distributor of Audi in New York. The Supreme Court held that the Due Process Clause precluded a suit against Seaway and World-Wide in Oklahoma when neither did any business there, shipped or sold any products to or in that state, had no agent to receive process there, or purchased advertisements in any media calculated to reach Oklahoma and where there was no showing that any other automobile sold by Seaway or World-Wide ever entered Oklahoma. A review of the facts of that case shows that Universal's reliance is misplaced. In *World-Wide*, the Court reaches the conclusion that "the mere 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.'" 444 U.S. at 298, 100 S.Ct. at 567, quoting *Hanson v. Denckla, supra*. Universal, however, established the requisite minimum contacts with West Virginia when its employee supervised the installation of the oven at Bakery's place of business.

Accordingly, Defendant's motion to dismiss is granted as to counts one, two and three of the Plaintiff's complaint, but denied as to count four.